# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

Hussein Hazime (Individual), Timeless
Mattresses LLC, a Michigan Corporation,
M&R Appliance and Mattresses LLC, a
Michigan Corporation, Rima Abou-Alayoui
(Individual), Hassan's Shop Inc., a Michigan
Corporation and Hassan Hazime (Individual)

        Plaintiffs,

v.

FOX TV Stations, Inc. d/b/a
Fox 2 News and WJBK

        Defendant.

_____/

Case No.: 12-15072

Honorable Nancy G. Edmunds

| | |
|---|---|
| El Kodssi Law Firm, P.C.<br>Hayssam El Kodssi (P68565)<br>10800 W. Warren Ave., Ste. 220<br>Dearborn, MI 48126<br>313-406-5013<br>elkodssi@msn.com | Honigman Miller Schwartz and Cohn, LLP<br>James E. Stewart<br>Leonard M. Niehoff<br>2290 First National Building<br>660 Woodward Ave.<br>Detroit, MI 48226<br>(313) 465-7542<br>jstewart@honigman.com<br>lniehoff@honigman.com<br>Attorney for Defendant |

## DEFENDANTS MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant, Fox Television Stations, Inc., misnamed in Plaintiffs' Complaint as Fox TV Networks Inc., moves this court for an order dismissing Plaintiffs' Complaint pursuant to Fed.R. Civ.P 12(b)(6) for the reasons set for the in the attached Brief in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6) with Exhibits A and B attached thereto.

Defense counsel and Plaintiffs' counsel met in person on two occasions, on Thursday, January 3, 2013 and Tuesday, January 15, 2013,  to discuss the case and Defendant's intention to file this motion.  Plaintiffs' counsel does not concur in the relief requested.

/s/James E. Stewart_____
Honigman Miller Schwartz and Cohn, LLP
James E. Stewart
Leonard M. Niehoff
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorney for Defendants

## CERTIFICATE OF SERVICE

I, James E. Stewart, hereby certify that on Fri, Feb 1, 2013, I filed the foregoing using the

Court's ECF system, which will serve counsel of record by email notice.


/s/James E. Stewart
Honigman Miller Schwartz and Cohn, LLP
James E. Stewart
Leonard M. Niehoff
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorney for Defendants

12024607.1

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

Hussein Hazime (Individual), Timeless
Mattresses LLC, a Michigan Corporation,
M&R Appliance and Mattresses LLC, a
Michigan Corporation, Rima Abou-Alayoui             Case No.: 12-15072
(Individual), Hassan's Shop Inc., a Michigan
Corporation and Hassan Hazime (Individual)
                                                    Honorable Nancy G. Edmunds

               Plaintiffs,

v.

FOX TV Stations, Inc. d/b/a
Fox 2 News and WJBK

               Defendant.

_____/

| | |
|---|---|
| El Kodssi Law Firm, P.C.<br>Hayssam El Kodssi (P68565)<br>10800 W. Warren Ave., Ste. 220<br>Dearborn, MI 48126<br>313-406-5013<br>elkodssi@msn.com | Honigman Miller Schwartz and Cohn, LLP<br>James E. Stewart<br>Leonard M. Niehoff<br>2290 First National Building<br>660 Woodward Ave.<br>Detroit, MI 48226<br>(313) 465-7542<br>jstewart@honigman.com<br>lniehoff@honigman.com<br>Attorney for Defendant |

# BRIEF IN SUPPORT OF DEFENDANT'S
# MOTION TO DISMISS PURSUANT TO
# FED. R. CIV. P. 12(b)(6)

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.    THE STANDARD UNDER RULE 12(b)(6), THE ALLEGATIONS OF THE
      COMPLAINT, AND THE BROADCASTS ....................................................2

II.   PLAINTIFFS' COMPLAINT ...................................................................6

III.  THREE PLAINTIFFS SHOULD BE DISMISSED BECAUSE PLAINTIFFS
      FAIL TO ALLEGE THAT ANY STATEMENTS WERE MADE ABOUT
      THEM .................................................................................................7

IV.   ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL...............9

      A.   Plaintiffs Fail to Allege Material Falsity of the Gist and Sting of the
           Reports ...................................................................................9

           1.   Plaintiffs Do Not Dispute That They Sell Used Beds That Appear
                New ............................................................................10

           2.   Plaintiffs Fail to State a Claim Regarding the Bedbugs Allegation..........14

      B.   Some Claims are Barred by the "Rhetorical Hyperbole" Doctrine .....................15

      C.   Some Claims Are Barred by the "Whole Context" Doctrine ..............................17

      D.   Plaintiffs' Complaint Fails to Allege Fault Sufficiently ......................................18

      E.   The Remaining "Tag Along" Claims Fail to State a Claim.................................20

CONCLUSION...................................................................................................21

## TABLE OF AUTHORITIES

CASES

*AIDS Counseling and Testing Ctr v. Group W Television, Inc.*,
   903 F.2d 1000 (4th Cir. 1990) .......................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................14

*Battaglieri v. Mackinac Center for Public Policy*,
   261 Mich. App. 296 (2004) ...........................................................................21

*Battaglieri v. Mackinac Center for Public Policy*,
   261 Mich. App. 296 (2004) ...........................................................................18

*Collins v. Detroit Free Press*,
   245 Mich. App. 27 (2001) ...............................................................................9

*Curtis v Evening News Association*,
   135 Mich App 101 (1984) ...............................................................................7

*Garvelink v. Detroit News*,
   206 Mich App 604 (1994) .............................................................................16

*Gilbert Shoe Co. v. Rumpf Pub. Co.*,
   112 F. Supp. 228 (D. Mass. 1963) ..................................................................8

*Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler*,
   398 U.S. 6 (1970) ..........................................................................................16

*Hustler, Inc. v. Falwell*,
   485 US 46 (1988) ..........................................................................................20

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 64 (1988) ..................................................................................16, 20

*Ireland v. Edwards*,
   230 Mich. App. 607, 584 N.W.2d 632 (Mich. Ct. App. 1998) ................2, 16

*Lacko v. Mercy Hospital*,
   829 F. Supp. 2d 543 (E.D. Mich. 2011) (Edmunds, J.) .............................2, 18

*Lakeshore Hospital v. Perry*,
   212 Mich. App. 396 (1995) ...........................................................................16

*Letter Carriers v. Austin*,
   418 U.S. 264 (1974) .......................................................................................16

*Levinsky v. Wal-Mart,*
     127 F.3d 122 (1st Cir. 1997)...................................................................................17

*Locricchio v. Evening News Ass'n,*
     438 Mich. 84 (1991) ..........................................................................................13

*McLachlan v. Kneff, et al.*
     No. 193448, 1997 WL 33344009 (Mich. Ct. App., 1997) (unpublished; copy attached
     as Exhibit B) .....................................................................................................10

*Michigan United Conservation Clubs v CBS News,*
     185 F. Supp. 893 (W.D. Mich., 1980), aff'd 665 F.2d 110 (6th Cir 1981) ...............7

*Milkovich v. Lorain Journal Co.,*
     497 U.S. 1 (1990).......................................................................................... 15-16

*Mino v Clio School District et al.,*
     255 Mich. App. 60 (2003)................................................................................ 14-15

*Morganroth v. Whitall,*
     161 Mich. App. 785 (1987)...............................................................................9, 17

*Philadelphia Newspapers, Inc., v Hepps,*
     475 U.S. 767,777 (1986) ..................................................................................9, 16

*Plumbing & Remodeling, LLC v. Fox News Network, LLC,*
     No. 12-cv-12867, 2012 WL 5906870 (E.D. Mich. 2012) (holding "the April 1, 2011
     news broadcast . . . is central to the Plaintiffs' claim for defamation. Accordingly, the
     Court will consider it in ruling on Defendants' motion to dismiss.")........................2

*Rouch v. Enquirer & News (After Remand),*
     440 Mich. 238, 487 N.W.2d 205 (Mich. 1992...............................................1, 9

*Schatz v. Republican State Leadership Committee,*
     669 F.3d 50 (1st Cir. 2012).................................................................................18

*Shay v. Walters,*
     No. 12-1494, 2012 WL6577207 (1st. Cir. Dec. 18, 2012) ..................................18

*Time, Inc. v. Pape,*
     401 U.S. 279 (1971).........................................................................................20

**OTHER AUTHORITIES**

Channel 2 Fox News..........................................................................................3-6

Fed. R. Civ. P. 12(b)(6)................................................................................2, 18, 20

First Amendment .......................................................................................1, 7, 20

http://www.myfoxdetroit.com/story/19115700/2012/07/25/dirty-little-mattress-secret-uncovered ..................................................................................................................1

http://www.myfoxdetroit.com/story/19268694/2012/08/13/family-helped-after-fox-2-expos-on-refurbished-mattresses ................................................................................1

# INTRODUCTION

Plaintiffs are in the perfectly legal but indisputably sketchy business of taking old and used mattresses, making them look new and selling them to an often unsophisticated public as "custom made." In this case "the truth hurts."

On July 25, 2012, the Detroit television station WJBK aired a news report warning consumers that when purchasing a mattress "refurbished" does not mean "new" ("the First Report"). The First Report discussed the public health concerns and laws governing the sale of used mattresses, and interviewed some consumers and some of the Plaintiffs. Several weeks later, WJBK aired a follow-up report ("the Second Report").[1] Although Plaintiffs' Complaint about those broadcasts includes many paragraphs, pages, and counts, all the claims allege the same cause of action: defamation.

Defamation claims raise serious First Amendment concerns. A defamation plaintiff therefore must clear a series of high hurdles just to state a claim—let alone prevail on it. As will be discussed within, a defamation plaintiff's Complaint must show that: (a) the defendant made the defamatory statement at issue; (b) the statement was about (or "of and concerning") the plaintiff; (c) the statement was factual in nature and not "loose, figurative language" or "rhetorical hyperbole"; (d) the statement was materially false; and (e) the defendant acted with the necessary degree of fault—either negligence or actual malice. *Rouch v. Enquirer & News*

---

[1] The Complaint incorporates the First and Second Reports by reference and Defendant encourages the Court to view them in their entirety. They are included on a disc filed as Exhibit A to this brief. They can also be accessed online. The Report can be found here: http://www.myfoxdetroit.com/story/19115700/2012/07/25/dirty-little-mattress-secret-uncovered. The Follow-Up Report can be found here: http://www.myfoxdetroit.com/story/19268694/2012/08/13/family-helped-after-fox-2-expos-on-refurbished-mattresses.

*(After Remand)*, 440 Mich. 238, 251, 487 N.W.2d 205 (Mich. 1992); *Ireland v. Edwards*, 230 Mich. App. 607, 614-15, 584 N.W.2d 632 (Mich. Ct. App. 1998).

Plaintiffs' Complaint fails to state a claim for defamation. Indeed, in one way or another, the Complaint fails to clear each and every one of these hurdles. Plaintiffs' Complaint should be dismissed because it fails to allege that any statement is "of and concerning" three of the Plaintiffs, fails to allege that the gist and sting of the Reports is false, fails to allege falsity with the required specificity, and challenges statements that are non-actionable hyperbolic opinion. Defendant therefore respectfully requests that this Court dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[2]

## ARGUMENT

**I.   THE STANDARD UNDER RULE 12(b)(6),THE ALLEGATIONS OF THE COMPLAINT, AND THE BROADCASTS**

For purposes of a motion brought under Fed. R. Civ. P. 12(b)(6), the court looks to the factual allegations of the complaint and accepts them as true. *Lacko v. Mercy Hospital*, 829 F. Supp. 2d 543, 547 (E.D. Mich. 2011) (Edmunds, J.). A court does not take as true "a legal conclusion couched as a factual allegation" or "threadbare recitals" of the "elements of a cause of action." *Id.* Also, "when a document is referred to in the complaint and is central to the plaintiff's claim, the court may consider it." *Id.* at 548. "This does not convert a motion to dismiss into a motion for summary judgment." *Id.* This rule has been specifically applied to defamation cases. *Plumbing & Remodeling, LLC v. Fox News Network, LLC,* No. 12-cv-12867,

---

[2] New World Communications of Detroit, Inc., ("NWC") owns and operates the Detroit area television station WJBK (also known as "Fox 2") and the station's website, myfoxdetroit.com, which prepared and broadcast the two Reports at issue in this litigation. NWC was erroneously named by Plaintiffs as "FOX TV Stations, Inc., d/b/a Fox 2 News and WJBK." Plaintiffs apparently were referring to Fox Television Stations, Inc. ("FTS"), which is a sister corporation of NWC. Plaintiffs declined to amend their complaint to substitute the correct defendant. For purposes of this motion, counsel are appearing on behalf of the erroneously named Defendant Fox Television Stations, Inc. although the same flaws that doom the claims against FTS also doom any claims against NWC.

2012 WL 5906870, at *3 (E.D. Mich. 2012) (holding "the April 1, 2011 news broadcast . . . is central to the Plaintiffs' claim for defamation.  Accordingly, the Court will consider it in ruling on Defendants' motion to dismiss.").

The Complaint alleges that WJBK broadcast the First Report on July 25, 2012 as part of its evening news program.  Complaint  ¶ 18.  It further alleges that the First Report was also posted on the myfoxdetroit.com website.  *Id.* at ¶ 19 and Exhibit C.  It describes the First Report as concerning "Plaintiffs' refurnished [sic] mattress businesses."  *Id.* at ¶ 18.  And it alleges that "Channel 2 Fox News broadcasted a follow-up story" that related to Plaintiffs' businesses (the Second Report).  This motion is based upon the allegations of Plaintiffs' Complaint and upon the First Report and the Second Report, both of which Plaintiffs refer to in their Complaint and are central to Plaintiffs' claim.

The First and Second Reports are available to the Court and Defendant encourages the Court to view them in their entirety.  For the convenience of the Court and for the written record, however, Defendant offers this brief summary.

The Reports describe the "perfectly legal" business – in Michigan at least –  of taking old and used mattresses, recovering them with new padding and cover, wrapping them in shiny plastic, hiding the required tag that informs the unsuspecting customer that it is in fact an old mattress and advertising them as "custom made" to an unsuspecting and often unsophisticated customer.  Ex. A.  The Reports focus on two customers (victims) of that business and the happy endings for them.  As can be seen when viewing Exhibit A, the First Report begins with an introduction by the WJBK anchors and investigative reporter Rob Wolchek.  Then, as Wolchek narrates, stacks of used and dirty mattresses are shown.  Wolchek next briefly interviews a consumer (later identified as "Del"), who talks about how the bed she purchased looked "new"

even though "the trick of it" is that "they" just "changed the top and stuffed it [the old, used bedding] back [inside the new cover]." *Id.*

The First Report then moves to a scene of an undercover reporter purchasing a mattress from Plaintiff Hassan's Shop. The undercover reporter asks: "This is new, right?" The salesman responds: "Yeah, refurbished." *Id.* After the WJBK undercover reporter buys the mattress and takes it from the store, Wolchek cuts open the new white cover on the outside of the mattress and the camera shows old and stained bedding inside.[3] *Id.*

As shown in the First Report, Wolchek goes to the factory (Plaintiff Timeless Mattresses) that supplies the mattresses to Plaintiff Hassan's Shop and asks a representative (later identified as Marcus) why they are using "old fabric" inside their bedding. *Id.* Marcus denies that they are doing so ("We're not using old fabric, sir"), but Wolchek interviews a woman named Jonita who was employed at Plaintiff Hassan's Shop which is owned by Plaintiff Hassan Hazime. The employee indicates that the bedding was not completely stripped down. She states that the mattresses were half-stripped, with only new covering used. This interview is punctuated with the television advertisements of Plaintiff Hassan's Shop, which repeatedly promote its beds as "custom made." *Id.*

Wolchek next interviews a consumer named Rober (phonetic), who states that when he purchased a mattress from Plaintiff Hassan's Shop, Rober was told he was being sold a new bed, although Rober acknowledges that it occurred to him later that it might be refurbished because it broke down quickly. *Id.* Wolchek reports that Rober, dissatisfied with the bed's quality, returned his bed to the Hassan's Shop and received another. Wolchek then goes on to report that

---

[3] Wolchek retained the used material he discovered inside this "custom made" mattress. Although obviously outside the scope of a 12(b)(6) motion, Defendant would be happy to produce it for the Court's inspection.

Del said she returned her bed to the Hassan's Shop because she found bedbugs in it. Del was given another mattress by Hassan's Shop, which alleged to Wolchek was also infested with bedbugs. *Id.*

The First Report returns to the undercover reporter purchasing the "custom made" bed from Hassan's Shop. Again, viewers are shown Wolchek cutting into the "custom made" bed to see what is inside. *Id.* Wolchek notes the presence of "a lot of new foam padding" but the camera shows that the mattress also includes old and used bedding material inside. *Id.* Wolchek then interviews a Wayne County health department inspector, who has observed Wolchek's procedure and examined the old bedding. The inspector states on camera that the health department has investigated the use of used bedding in the past, and the inspector indicates that the re-use of such bedding material inside is problematic because bedbugs are "travelers" and "hitchhikers." *Id.*

Wolchek goes to Hassan's Shop to speak with owner Hassan Hazime himself about what the investigation has revealed. Plaintiff Hassan Hazime denies that he has ever *any* received complaints from *any* customers. The First Report then moves to a tour of the factory identified on the door as Timeless Mattresses, conducted by Marcus. Wolchek sees piles of dirty mattresses in close proximity to the mattresses that are being rebuilt. As seen in the First Report, Marcus says to Wolchek: "What I'm telling you is, before they even bring 'em in here; before we bring 'em in here, we do inspect 'em and we do spray 'em and when they come in, we strip 'em. Basically, there's only the spring system in the mattress – which is just – you think bedbugs are gonna live in a spring system?" *Id.* Nevertheless, the First Report shows stacks of old and unstripped mattresses in the same vicinity as new material. At the conclusion of the factory visit,

Marcus concedes that the factory does sometimes use "old product, old stuff," contradicting his earlier statement. *Id.*

In the final segment of the First Report, Wolchek goes to the Timeless Mattress store in Livonia and asks to see the labels on the mattresses. A bed is pulled away from a wall, showing that the mattresses have two tags directly on top of each other. *Id.* The first tag, which is white and visible to the consumer under the plastic (if they think to move the mattress away from the wall), states that the bed is manufactured by Timeless Mattresses in Livonia and that it conforms to federal standards of flammability. *Id.* The second tag, which is yellow and placed directly under the first tag with the contents not visible to the consumer (unless they move the mattress away from the wall, cut through the plastic covering, and remove the white tag) discloses that the bed contains "second hand materials." *Id.*

The anchors and Wolchek end the First Report by explaining that Michigan, unlike some other states, allows the sale of used mattresses. Wolchek stating "this is all perfectly legal ... It's legal what they're doing. It's kind of a gross thing."

As can be seen on Exhibit A, Defendant broadcast a Second Report on August 13, 2012. It reprised the First Report and described how two local mattress stores had come forward to help Del and Rober by donating actual new beds to them.[4] Like the First Report, the Second Report closed by reiterating that under Michigan law, the sale of refurbished mattresses incorporating used material was "completely legal."

## II.  PLAINTIFFS' COMPLAINT

---

[4] Plaintiffs devote much of their complaint to allegations that WJBK was "promoting" these other mattress businesses while one of the other mattress companies tweeted about its donations. None of these allegations, even if true, have any relevance to any claim asserted by Plaintiffs and they do not allege otherwise. Indeed, none of the alleged statements by the other mattress companies (or about them) mentions Plaintiffs.

Three individuals and three companies – Hussein Hazime, Rima Abou-Alayoui, Hassan Hazime, Hassan's Shop, Inc., Timeless Mattresses LLC,  and M&R Appliance and Mattresses LLC, – filed this Complaint on November 15, 2012.  It is a defamation claim with the usual "tag along" claims common (but pointless) found in many defamation complaints.  The Complaint contains eight claims for relief.  The first, second, fourth, and fifth claims for relief are expressly labeled "defamation" claims.  The sixth claim is styled as a "tort/negligence" claim but alleges defamation.  Complaint ¶ 115.  The seventh is styled as "injurious falsehood" but does nothing except re-allege the preceding claims, which are for defamation.  *Id.* at ¶ 119.  The eighth claim bears the curious and kitchen-sink-inspired heading "Injurious Falsehood/Tortious Interference with an advantageous economic relationship and tortious interference with an economic relationship-Business defamation/defamation per se."  *Id.* at p. 15.  This heading suggests that the eighth claim is intended to be a defamation claim, at least in part.  The allegations of the eighth claim substantiate this, incorporating Defendant's purportedly "derogatory or disparaging communications" about the Plaintiffs.  *Id.* at ¶ 125.

## III.    THREE PLAINTIFFS SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO ALLEGE THAT ANY STATEMENTS WERE MADE ABOUT THEM

Another basic element of a defamation case is that the statements at issue must be about—or, in the parlance of defamation law, "of and concerning"—the plaintiff.  *Curtis v Evening News Association*, 135 Mich App 101, 103 (1984) (holding that "[b]ecause plaintiff failed to allege that defendant published a false and defamatory statement 'concerning plaintiff,' plaintiff failed to state a claim on which relief could be granted").  *See also Michigan United Conservation Clubs v CBS News*, 185 F. Supp. 893, 900 (W.D. Mich., 1980), aff'd 665 F.2d 110 (6th Cir 1981) (holding that, "[t]o avoid conflict with First Amendment values, this court must

reaffirm the general tort principle which requires that a publication specifically refer to or point to the plaintiff before he is permitted to maintain suit").

Three of the plaintiffs fail to meet this basic pleading requirement.  A careful review of the Complaint, the First Report, and the Second Report reveals that the complained of broadcasts make no reference whatsoever to plaintiffs Hussein Hazime, M&R Appliance and Mattresses LLC, or Rima Abou-Alayoui.  Indeed, the Complaint makes no allegations with respect to these three plaintiffs except that they are Michigan residents or Michigan corporations.  *See* Complaint at ¶¶ 6, 8, 9 and 11.  Plaintiff Hussein Hazime, one of the Plaintiffs about whom nothing was broadcast, stated in Paragraph 5-6 of Plaintiffs' Affidavit in Compliance with Show Cause Order dated January 4, 2013, and in Support of Diversity Jurisdiction (docket 5), that he is the "only member" of corporate Plaintiff Timeless Mattresses, LLC.  Even if correct, statements about the corporation Timeless Mattresses, LLC are not as a matter of law "of and concerning" the individual Hussein Hazime.  *Gilbert Shoe Co. v. Rumpf Pub. Co.*, 112 F. Supp. 228, 229 (D. Mass. 1963) (affirming defendant's motion to dismiss, holding "The allegedly libelous statement involved here refers solely to the plaintiff corporation and not to the individual plaintiff.  It is essential in an action for libel, that the publication of the libel should be of and concerning the plaintiff. . .  [A]n officer or stockholder of a corporation who is not personally libeled has no right to recover for a libel published of the corporation."); *see also AIDS Counseling and Testing Ctr v. Group W Television, Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990) (upholding dismissal of individual plaintiffs, holding "Common sense, as well as the law of defamation, dictates that, in order for a claim for defamation to arise, a publication must refer to the individual who seeks to sue on the publication.  The mere fact that a publication might injure investors in a business does

8

not give rise to a claim for defamation in those investors unless the publication appears to refer to the investors individually.")

Because the Complaint has not (and cannot) allege that any statements were made about these three plaintiffs, Plaintiffs have not stated a defamation claim on behalf of plaintiffs Hussein Hazime, M&R Appliance and Mattresses LLC, or Rima Abou-Alayoui and these three plaintiffs should be dismissed from this case.

## IV.   ALL OF PLAINTIFFS' CLAIMS ARE SUBJECT TO DISMISSAL

The Complaint identifies a number of statements made in the First Report and the Second Report that it suggests are false and defamatory.  Because the Complaint is so poorly structured and confusing, it is helpful to divide those allegations into several categories.  As will be shown, none of the statements identified in the Complaint can serve as the basis for a defamation action here.

### A.   Plaintiffs Fail to Allege Material Falsity of the Gist and Sting of the Reports

A defamation plaintiff must allege that the statement at issue is materially false.[5]  A plaintiff cannot state a claim for libel based on a minor error if the gist or "sting" of the report is substantially true.  *Rouch v. Enquirer & News of Battle Creek*, 440 Mich. 238, 259 (1992); *Collins v. Detroit Free Press*, 245 Mich. App. 27, 32 (2001).  A court may determine, as a matter of law, that a statement is not materially false.  E.*g.*, *Collins* at 35-36 (concluding that a statement in an article was not materially false); *Morganroth v. Whitall*, 161 Mich. App. 785, 790 (1987) ("Reading the article as a whole, we believe it is substantially true …").

---

[5] That a defamation plaintiff bears the burden of proving falsity where the report is about a matter of public concern, as here, is a principle of constitutional magnitude.  *Philadelphia Newspapers, Inc., v Hepps*, 475 U.S. 767, 777 (1986).

In this case, a review of the Complaint and the Reports conclusively demonstrates that the remainder of the statements about which Plaintiffs complain are, as a matter of law, not materially false. We can divide those statements into two categories. First, Plaintiffs allege that several statements in the Reports suggest that Plaintiffs were being less than fully forthcoming with their customers about the contents of their "refurbished" beds. Second, Plaintiffs allege that several statements in the Report that accuse Plaintiffs of selling one customer mattresses infested with bedbugs. As to both categories of statements, Plaintiffs have failed to state a claim upon which relief can be granted.

### 1.    Plaintiffs Do Not Dispute That They Sell Used Beds That Appear New

The Reports provided a valuable public service by alerting consumers to the possibility that they could unwittingly buy a mattress that looked new on the outside, but contained used, contaminated bedding inside. The Complaint alleges that these Reports made it appear that Plaintiffs were less than honest with their customers about the contents of their mattresses. *See, e.g.*, Complaint at ¶¶ 1, 20, 21, 24, 30, 32, 33, 70, 71, 73, 75, and 76. Plaintiffs' allegations here suffer from numerous infirmities.

Contrary to the allegations of Plaintiffs' Complaint, Defendant simply  and accurately reported about the impression of two customers -- Del and Rober – who said that they *believed* that the beds they bought were new, but later discovered the mattresses contained used bedding hidden under a new cover.    WJBK did not make these allegations; rather it reported the undisputed (and indisputable) fact that Del and Rober made the allegations about their own personal impressions of the mattresses.

*McLachlan v. Kneff, et al.* No. 193448, 1997 WL 33344009 (Mich. Ct. App., 1997) (unpublished; copy attached as Exhibit B) is instructive. In that case, the plaintiff alleged that

the defendant had written an article for the Traverse City Record Eagle that contained the following statement: "Have your reporter colleagues heard of the Crawford Co. equalization director's charge that Commissioner McLachlan offered him a bribe in exchange for a reduction in the City Mgt. Landfill assessment? Indictment is expected shortly according to my sources. I have some details (names for confirmation, etc.)." Plaintiff claimed that the statement was false.

The Michigan Court of Appeals, however, held that plaintiff had not alleged a defamation claim because the defendant had simply reported that another individual had raised allegations of bribery:

> In arguing to this Court, plaintiff takes the statement out of context by asserting that defendant Dresch wrote that plaintiff had offered the equalization director a bribe. Dresch actually wrote that the equalization director had alleged that plaintiff had offered him a bribe. Plaintiff does not dispute that the equalization director said this but only that he did not actually offer a bribe. Therefore, plaintiff has not established the requisite element of a defamation that the statement in question is false. *Id.* at *2

Moreover, the First Report and the Second Report include numerous facts—uncontested and uncontestable in the Complaint—that establish Plaintiffs were indeed less than candid with their customers. In light of those facts, Plaintiff has not and cannot make out a plausible claim that either the First Report or the Second Report is materially false in this respect.

Consider the following key positions in the Report that Plaintiffs do not dispute in their Complaint.

- The Report shows that Plaintiffs made their mattresses look like new. Wrapped in new fabric and plastic, a consumer cannot tell what is inside the bed. Plaintiffs do not dispute this.

- The Report shows that Plaintiffs aggressively marketed their mattresses as "custom made." Plaintiffs do not dispute this.

11

- The Report shows that in dealing with customers, Plaintiffs equated "refurbished" mattresses with "new" mattresses. The First Report shows an undercover reporter purchasing a mattress from Plaintiff Hassan's Shop. The First Reporter asks: "This is new, right?" Plaintiffs' salesman responds: "Yeah, refurbished." Plaintiffs do not dispute this.

- The Report shows Wolchek asked company representative Marcus why they were using "old fabric" in their bedding. Marcus initially lied about whether the company was doing so. Later in the First Report, after being confronted with material Wolchek had cutout from the inside of a Hassan's Shop mattress, Marcus admitted that they did indeed use "old product, old stuff." Plaintiffs do not dispute this.

- The Report shows that although Plaintiffs attached yellow labels to their mattresses stating "This article of bedding consists of in whole or in part second hand materials," they placed that label under *another* label that obscured the text about the used materials.[6] The First Report shows the labels further hidden from scrutiny under the plastic wrapping. And the First Report shows that Plaintiffs displayed mattresses with these labels against the wall. Plaintiffs do not dispute this.

- The Report shows Hassan Hazime denying that he has ever received a customer complaint—a statement contradicted by the interviews with the two aggrieved customers, who said they did complain. Plaintiffs do not dispute this.

---

[6] Plaintiffs' emphasis on the fact that this obscured text is "in large font capitalized and bolded," Complaint ¶ 14, is therefore disingenuous if not downright silly.

In sum, Plaintiffs' business practices—as shown in parts of the First Report they do not challenge—confirm that they are not forthright with their customers about the contents of their mattresses.

The Complaint labors to make Plaintiffs' way of doing business look more honorable by alleging that "all customers sign acknowledgments that Plaintiffs' mattresses are refurbished" (Complaint ¶ 34), that Del knew that the mattresses she purchased were "refurbished" (Complaint ¶ 35), that she signed a form acknowledging she was buying "refurbished" mattresses (Complaint ¶ 75), and that "[t]hese mattresses are sold as used mattresses and/or refurbished mattresses" (Complaint ¶ 70).

There are at least two problems with this argument.  First, in light of the fact that Plaintiffs' salesperson told an undercover "customer" that the mattresses were "new" and that "refurbished" was the same as "new", it is impossible to understand how these disclosures would have helped a consumer understand what they were buying.   Second, and perhaps more importantly, Plaintiffs have misrepresented to this Court what their form says.  As the receipt attached to Plaintiffs' Complaint as Exhibit B shows, the form signed by Del and by others simply says: "All mattresses are rebuilt / Reconditioned."  The form does *not* say what Plaintiffs represent to this Court it says—for example, it does not disclose that the mattresses are "refurbished" or "used."   And it does *not* disclose that the mattresses include old bedding— which is the entire point of the First Report.  .[7]

---

[7] This disposes of Plaintiffs' "libel by implication" theory in its entirety.  Such a theory is available only where the defendant omitted a material fact from the broadcast or publication in question.  *See Locricchio v. Evening News Ass'n*, 438 Mich. 84 (1991).  Plaintiffs argue that the fact omitted from the broadcasts here is that customers signed this form.  That does not advance Plaintiffs' argument however because—as noted—the form does not disclose to customers that the mattresses include soiled, old bedding.  Indeed, if this fact had been included in the broadcasts it would have done nothing but underscore the deceptive nature of Plaintiffs' business practices. After all, the form does not refer to the mattresses as "re-covered"—Plaintiffs' actual practice.  Instead, it referred to them as "rebuilt" and "reconditioned," leaving consumers with an exaggerated understanding of what Plaintiffs were actually doing.

In sum, Plaintiffs' Complaint fails to set forth factual allegations that would allow this Court to conclude that Plaintiffs can prove that these statements are materially false and that Plaintiffs therefore have a plausible claim for defamation as to these statements.   Defendant therefore respectfully requests that this Court dismiss Plaintiffs' claims as to these statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."

### 2.     Plaintiffs Fail to State a Claim Regarding the Bedbugs Allegation

The second category of statements includes those that relate to Del's discovery of bedbugs in her mattresses. *See* Complaint ¶ 1, 22, 25, 30, 69.  Plaintiffs do not allege that WJBK inaccurately portrayed Del's allegations.   Instead, Plaintiffs simply make generic statements that all their mattresses "are sanitized and/or disinfected before sale" and "do NOT contain bedbugs." *Id.* at ¶¶ 15 and 69. [8]  These boilerplate, generalized allegations do not suffice to allege material falsity regarding the bedbugs statements under Michigan law.

First, Plaintiffs' defamation claim fails to state a cause of action because Plaintiffs do not expressly allege that Del's allegation about finding bedbugs in her mattresses that she purchased from Hassan's Shop is false.  Consider, for example, *Mino v Clio School District et al.*, 255 Mich. App. 60 (2003).  In that case, plaintiff was a former school superintendent who brought a variety of claims against an array of defendants.   One was a defamation claim against an individual who had sent a letter to plaintiff's potential new employer suggesting that, during plaintiff's tenure at the school system, rumors of sexual impropriety had circulated about him.

---

[8] It does not matter for purposes of this Motion, but a shift in Plaintiffs' position is worth noting here.  In the Report, Marcus stated that bedbugs could not travel from old bedding to new because the mattresses were sanitized and stripped down to their metal springs before they were brought into the building.  The Report, however, shows stacks of old mattresses containing old bedding piled in the same area as the refurbished beds.  In their Complaint, Plaintiffs have abandoned their claim that they strip down the beds to the springs, and now simply allege that the "mattresses are sanitized and/or disinfected before sale."  Complaint ¶ 15.

The Michigan Court of Appeals affirmed the Circuit Court's decision to dismiss the claim because, as here, the plaintiffs failed to specifically contest the veracity of the statements. "Regarding [defendant]'s statements about rumors concerning sexual improprieties, plaintiffs do not deny that there were certain rumors about Dr. Mino.   Thus, plaintiffs have failed to demonstrate that Peacock's statements were defamatory falsehoods ..." *Id.* at 77.   The same result is required here.  Plaintiffs do not contest that Del said she found bedbugs in the mattresses she bought from them; they simply make a generic statement that their mattresses generally do not contain bedbugs. *Id.* at ¶¶ 15, 69.  This is insufficient to plead a claim for defamation.

*As discussed above, McLachlan, supra* also requires dismissal of Plaintiffs' defamation claim because as in that case, Defendant simply repeated one *allegation* by a former customer that she found bedbugs in her mattress.

The Reports do not state that Plaintiffs' mattresses, in fact, contained bedbugs.  Indeed, after cutting open the mattress purchased from Plaintiff Hassan's Shop, Wolchek stated that he did *not* find any.   Rather, Defendant simply reported *Del's allegation* that the mattresses she bought from Plaintiff's store contained bedbugs and Plaintiff Hassan Hazime's claim that he never received any complaints from his customers.  Plaintiffs do not dispute that Del made this allegation and thus Defendant's reporting of it is not false as a matter of law.[9]

**B.     Some Claims are Barred by the "Rhetorical Hyperbole" Doctrine**

In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the Supreme Court of the United States reaffirmed that a private-figure defamation plaintiff has the burden of proving that the

---

[9] It may also be worth noting that Plaintiffs do not contest that Del bought her "custom made" mattresses from Plaintiff Hassan's Shop or that Hassan's Shop replaced the mattresses about which Del complained.   Also, Defendant reported Plaintiffs' version of these events, including Plaintiff Hassan Hazime's denial of ever receiving any complaints from customers and Marcus's description of how they strip and spray the beds.

statements on which the lawsuit is based are false.[10]   In addition, the Court there reaffirmed the related principle that, because statements using "imaginative expression," "rhetorical hyperbole," and "loose, figurative language" cannot be proved true or false, a defamation claim cannot be based upon such statements.  *Milkovich* at 21, citing and quoting from *Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13-14 (1970) (holding "blackmail" to be constitutionally protected in that context as "rhetorical hyperbole, a vigorous epithet"); *Letter Carriers v. Austin*, 418 U.S. 264 (1974) (holding "traitor" to be protected as "rhetorical hyperbole, a lusty and imaginative expression"); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 64, 50 (1988) (concluding that a parody could not constitutionally serve as the basis for an infliction of emotional distress claim because it did not state facts that could be proved true or false).

This "rhetorical hyperbole" doctrine has been recognized and applied in numerous Michigan cases.  *See, e.g.*, *Garvelink v. Detroit News*, 206 Mich App 604 (1994) (holding that a parody of a school official was protected as rhetorical hyperbole); *Lakeshore Hospital v. Perry*, 212 Mich. App. 396 (1995) (holding that expressions of personal opinion cannot be proved true or false and so are protected); *Ireland v. Edwards*, 230 Mich. App. 607 (1998) (holding that "necessarily subjective" statements cannot be proved true or false and therefore are not actionable).

The Complaint alleges that the First Report included the following statements:  (1) "Dirty little mattress secret uncovered" (Complaint ¶ 26); (2) "It looks like a new bed when you open it there was something inside that could give you nightmares" (sic) (Complaint ¶ 27); (3) "It's a Problem Solver story that gave people the creeps—an expose of the refurbished mattress

_____

[10] In *Hepps, surpa,* the Court had held that a plaintiff in a defamation action "must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant."

business" (Complaint ¶ 28 ); and (4) "Problem Solver Rob Wolchek takes you inside a mattress factory in suburban Detroit, and what you'll see will have you tossing and turning all night" (Complaint ¶ 29).

All of these statements clearly fall within the rhetorical hyperbole doctrine. Phrases like "[d]irty little mattress secret," "something inside … could give you nightmares," it's a "story that gave people the creeps," and "what you'll see will have you tossing and turning all night" are precisely the sort of colorful, loose, figurative, imaginative, subjective, non-literal statements that the doctrine exists to protect. *See, e.g., Levinsky v. Wal-Mart*, 127 F.3d 122, 128 (1st Cir. 1997) (statement that plaintiff's store was "trashy" was non-actionable because completely subjective). It is absolutely clear that, as a matter of constitutional law, Plaintiffs have failed to state a claim with respect to these statements.

### C.   Some Claims Are Barred by the "Whole Context" Doctrine

It is well settled that, in assessing a defamation claim, a court must view the statements at issue in the context of the entire publication or broadcast. *See, e.g., Morganroth v. Whitall*, 161 Mich. App. 785, 790 (1987) (holding that "[i]n determining whether an article is libelous, it is necessary to read the article as a whole"). This makes sense: a contrary rule would allow a defamation plaintiff to disregard what the article or broadcast actually says and to base a claim on a statement unfairly taken in isolation.

One of the central claims in Plaintiffs' Complaint is that Defendant accused Plaintiffs of "defrauding" their customers. Indeed, the word "defraud" is used in numerous paragraphs in the Complaint. *See* Complaint ¶¶ 1, 20, 24, and 74. A review of the First Report and the Second Report in their entirety, however, establish that these allegations of the Complaint fail to state a claim.

17

Neither the First Report nor the Second Report accuses Plaintiffs of engaging in any form of fraudulent or otherwise unlawful behavior. No variant of the word "fraud" appears anywhere in any of the broadcasts. To the contrary, both the First Report and the Second Report specifically state that Plaintiffs are conducting their business lawfully. The First Report closes with Wolchek stating: "This is all perfectly legal … It's legal what they're doing." And the Second Report concludes by reiterating that Plaintiffs' conduct was "completely legal."

In light of the fact that the Reports do not contain the word "defraud," Plaintiffs allege that Defendant "implied" that they defrauded their customers (*see* Complaint ¶¶ 1, 20, and 24). This tactic does not help their cause. Again, a view of these reports in their entirety shows that any implication of fraudulent or other unlawful activity was expressly denied by Plaintiffs on camera, and by Wolchek when he stated that their practices were "legal." *See Battaglieri v. Mackinac Center for Public Policy*, 261 Mich. App. 296 (2004) (rejecting a false light claim based upon a "strained reading" of the publication at issue, which included statements belying the interpretation plaintiff wished to place upon it.)

For all of these reasons, Plaintiffs have failed to state a claim as to these statements.

**D.    Plaintiffs' Complaint Fails to Allege Fault Sufficiently**

A plaintiff does not survive a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) by pleading "legal conclusion[s] couched as a factual allegation[s]" or "threadbare recitals" of the "elements of a cause of action." *Lacko, supra*. Yet that is precisely what Plaintiffs have done here with respect to the element of fault. *See* also *Schatz v. Republican State Leadership Committee,* 669 F.3d 50 (1st Cir. 2012) and *Shay v. Walters,* No. 12-1494, 2012 WL6577207 (1st. Cir. Dec. 18, 2012) applying the "*Iqbal – Twombly*" requirements to allegations of actual malice and negligence in defamation cases.

Plaintiffs allege that Defendant published the allegedly defamatory statements with actual malice—that is, with knowledge of falsity or in reckless disregard of the truth. *See* Complaint at ¶¶ 34, 35, 36, 83, 89, 106, 107, 108, and 124. But Plaintiffs' allegations about actual malice are merely boilerplate allegations, devoid of the necessary factual basis or details to support their allegations regarding the bed bug statements. Thus, Plaintiffs have failed sufficiently to allege actual malice with respect to the bedbug statements allegedly made by Defendant.

Plaintiffs offer some factual allegations in support of their actual malice allegation with respect to only one of the alleged statements—the suggestion that Del and Rober were led to believe they were buying "new" beds. *Id.* at ¶¶ 34, 35, and 36. Plaintiffs allege that Defendant "maliciously disregarded information that Dale (sic) knew in fact that the purchased mattresses that were refurbished and that acknowledged same on the receipt." *Id.* at ¶¶ 35. Plaintiffs attached a copy of Del's receipt as Exhibit B to their Complaint, which states that "All Mattresses are rebuilt / Reconditioned." Ex. B to Complaint. But Plaintiffs' allegations of actual malice related to Del's belief that she was buying a new mattress fail for a variety of reasons. First, as noted above, Defendant simply reported Del's and Rober's impressions that they *believed* they were buying new mattresses. Defendant did not endorse the statement as true as to them. Second, as is also discussed above, Plaintiffs did not and cannot allege that Del and Rober's *impressions* and *beliefs* were *false* – because those customers believed what they believed. Third, at best, the evidence cited in Plaintiffs' Complaint suggests that it is unclear whether Plaintiffs make adequate disclosures to their customers. The receipt does not inform the customers that they were buying a "used" or "refurbished" mattress, as Plaintiffs allege; the receipt uses the terms "rebuilt" and "reconditioned," which may be ambiguous to an unsophisticated consumer who sees a mattress covered in new plastic with a new cloth cover and

19

thinks "new."  An actual malice case cannot be based upon a factual context that is inherently ambiguous.  *See Time, Inc. v. Pape*, 401 U.S. 279 (1971) (actual malice cannot be proved with respect to a factual context that is "bristl[ing] with ambiguities)

Because Plaintiffs have also failed to allege facts sufficient to make it plausible to conclude that Defendant acted with  actual malice, their Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E.     The Remaining "Tag Along" Claims Fail to State a Claim

As a matter of federal constitutional law a plaintiff raising a claim based on allegedly false statements cannot escape the strictures of the First Amendment by relabeling a defamation claim as something else.  *See Hustler, Inc. v. Falwell*, 485 US 46, 55 (1988) (holding that this protection "is necessary to give adequate breathing space to the freedoms protected by the First Amendment").  Plaintiffs, like many plaintiffs, have nevertheless tried this approach here.

As noted above, the eight counts in Plaintiffs' Complaint amount to nothing more than a claim for defamation. To the extent this Complaint purports to be anything other than a defamation claim, those claims fail for the same reasons the defamation claim fails. As *Hustler* makes clear, Plaintiffs cannot do an end-run around the First Amendment.

In addition, a close examination of those claims reveals that they are nothing more than an inadequately pled compilation of labels and legal conclusions. Plaintiffs' third claim, labeled as "false light," is typical.  It does not even recite the elements of such a claim; rather, it alludes in the broadest terms imaginable to *other* types of privacy claims, such as misappropriation and intrusion. *See* Complaint ¶ 93. And it includes this incoherent allegation: "The privacy action is premised solely upon a false disclosure of legitimate business and being put publicly in a 'false

light.'"  Complaint ¶ 94.[11]  Plaintiffs' other "claims"—for negligence (Claim Six) and injurious falsehood and interference with contract (Claim Eight)—plead with even less detail, doing nothing but intoning these phrases without sufficient particularity to state a cause of action.  To say that such pleading does not survive current pleading standards is a masterpiece of understatement.

**CONCLUSION**

When all is said and done, it is the plaintiffs who chose their business of selling old mattresses and it is the Plaintiffs who chose their method of conducting this business.  WJBK presented two news reports that provided the experiences of two customers and repeated explanations by the Plaintiffs.  What the Plaintiffs do not like is how their "perfectly legal" business practices look in the light of day.  But that does not amount to a defamation claim or any other claim.

For the reasons set forth above, Defendant respectfully requests that this honorable Court grant Defendant's Motion and dismiss Plaintiffs' Complaint with prejudice and with costs and fees to Defendant.

/s/James E. Stewart
Honigman Miller Schwartz and Cohn, LLP
James E. Stewart
Leonard M. Niehoff
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorney for Defendants

---

[11] In any event, for purposes of the arguments advanced here a "false light" claim is indistinguishable from a defamation claim. *See Battaglieri v. Mackinac Center for Public Policy*, 261 Mich. App. 296 (2004).

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Stewart, hereby certify that on Fri, Feb 1, 2013, I filed the foregoing using the

Court's ECF system, which will serve counsel of record by email notice.

Respectfully submitted,

/s/James E. Stewart
Honigman Miller Schwartz and Cohn, LLP
James E. Stewart
Leonard M. Niehoff
2290 First National Building
660 Woodward Ave.
Detroit, MI 48226
(313) 465-7542
jstewart@honigman.com
lniehoff@honigman.com
Attorney for Defendants

12000681.5